AnThony B. TillMAN
FULL NAME

COMMITTED NAME (if different)

650-2=Dorm 14 Bed 207Low P.O.Box 900
FULL ADDRESS INCLUDING NAME OF INSTITUTION
Avenal State Prison
CDC#C08892
PRISON NUMBER (if applicable)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

AnThony B. TillMAn

PLAINTIFF,

v.

CDC & Board of Parole
Hearings

DEFENDANT(S).

CASE NUMBER

**CV09  02090**

*To be supplied by the Clerk*

**CIVIL RIGHTS COMPLAINT
PURSUANT TO** *(Check one)*
☐ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

## A.  PREVIOUS LAWSUITS

1.  Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes  ☑No     (SSO)

2.  If your answer to "1." is yes, how many? _____

    Describe the lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.) I am filling out the civil Rights Complaint because of my illegal Confinement. I am chargeing them 1 million dollars for every year that my 8th amendment Right has been violated, and would like to be released as soon as possible.

**LODGED**

2009 MAR 26 AM 9:49
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

RECEIVED
CLERK, U.S. DISTRICT COURT

MAR 2 5 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

a. Parties to this previous lawsuit:
   Plaintiff _____

   _____

   Defendants _____

   _____

b. Court _____

   _____

c. Docket or case number _____

d. Name of judge to whom case was assigned _____

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) _____

f. Issues raised: _____

   _____

   _____

g. Approximate date of filing lawsuit: _____

h. Approximate date of disposition _____

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred?  ☑ Yes   ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint?  ☑ Yes   ☐ No

   If your answer is no, explain why not _____

   _____

   _____

3. Is the grievance procedure completed?  ☑ Yes   ☐ No

   If your answer is no, explain why not _____

   _____

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff _Anthony B. Tillman_
                                                          (print plaintiff's name)

who presently resides at _650-2-Dorm 14 Bed 207Low P.O.Box 900 A.S.P._ ,
                         (mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at
_The Board of Parole Hearings in Avenal State Prison, Avenal Calif. 93204_
                         (institution/city where violation occurred)

---

**CIVIL RIGHTS COMPLAINT**

on (date or dates) *March 23, 2009* , _____ , _____ .
     (Claim I)       (Claim II)      (Claim III)

**NOTE:** You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant *The CDC Board of Parole Hearings* resides or works at
    (full name of first defendant)
    *Avenal State Prison, Avenal, Calif. 93204*
    (full address of first defendant)
    *Frank Michell, Presiding Commissioner*
    (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☑ official capacity.

Explain how this defendant was acting under color of law:
*As a Board of Parole Hearing Commissioner*

2. Defendant *Frank Michell* resides or works at
    (full name of first defendant)
    *Avenal State Prison*
    (full address of first defendant)
    *Presiding Commissioner*
    (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☑ official capacity.

Explain how this defendant was acting under color of law:
_____
_____

3. Defendant _____ resides or works at
    (full name of first defendant)
    _____
    (full address of first defendant)
    _____
    (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:
_____
_____

**D. CLAIMS***

**CLAIM I**

The following civil right has been violated:

The eight<sup>th</sup> amendment of the California Constitution.

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

The Defendant denied me my freedom because of my juvenile record which is 38 years old. That alone is a violation of my Civil Rights.

*\*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

**CIVIL RIGHTS COMPLAINT**

CV-66 (7/97)                                                                                                                         Page 5 of 6

**E.  REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

I would like to be released as soon as possible, and granted an amount of 1 million dollars for each year that I have been ~~HELD~~ over my 19 year sentence or a amount that can help me start a legal, safe life from the time I'm free, until. So I can teach my friends and relatives to abide by the law at all times, no matter what!

3-23-09
_(Date)_

Anthony Tillman
_(Signature of Plaintiff)_

CV-66 (7/97)                                                                                    Page 6 of 6

MC-275

Name _Anthony Tillman_

Address _P.O. Box 9_

_Avenal, CA. 93204_

CDC or ID Number _C-08892_

FILED
SEP 30 2004
CRIM DIV #2

_In The Sacramento Municipal_
_Coup District County of S.A.O State. Ca_
(Court)

| | |
|---|---|
| _Anthony Tillman_ <br> Petitioner <br><br> vs. <br><br> Respondent <br> _The People of the State of Ca._ | **PETITION FOR WRIT OF HABEAS CORPUS** <br> _04F08593   D-17_ <br> No. _85F02474-85F02340-85F02384_ <br> (To be supplied by the Clerk of the Court) |

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**   WEST GROUP Official Publisher

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

## COURT OF APPEAL, THIRD APPELLATE DISTRICT

Criminal   C059693

In re ANTHONY TILLMAN on Habeas Corpus.

Judge:
Nature of Action:  hc        Habeas corpus

### ATTORNEY - LITIGANTS

In propria persona

> Petitioner
> Anthony Tillman
> C-08892
> California State Prison Kings County
> One Kings Way, P.O. Box 9
> Avenal, CA  93204

Office of the State Attorney General (Bar No. SAGSAC-01)
P.O. Box 944255
Sacramento, CA  94244

> Respondent
> The People

### DOCKET EVENTS

08/18/2008
Petition for a writ of habeas corpus filed.
(ns)

MC-275

Name _ANTHONY TILLMAN_

Address _650-207L_

_P.O. BOX 9_

_Avenal, Ca. 93204_

CDC or ID Number _C-08892_

SUPREME COURT

**FILED**

SEP 2 2008

Frederick K. Ohlrich Clerk

_____
Deputy

_California State Supreme_
_Court, McAllister St S.F. Ca, 94102-4797_
(Court)

---

_ANTHONY TILLMAN_
Petitioner

vs.

_Mendoza K. Powers_
Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

**S166374**

No. _____
(To be supplied by the Clerk of the Court)

RECEIVED

SEP 2 - 2008

CLERK SUPREME COURT

---

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court [as amended effective January 1, 2007]. Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page 1 of 6

Form Approved for Optional Use
Judicial Council of California
MC-275 [Rev. January 1, 2007]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 at seq.;
Cal. Rules of Court, rule 8.380
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a. (1) Name of court: _NO RECOLLECTION_

   (2) Nature of proceeding (for example, "habeas corpus petition"): _NO RECOLLETION_

   (3) Issues raised: (a) _NO RECOLLECTION_

   (b) _NO RECOLLECTION_

   (4) Result (Attach order or explain why unavailable): _NO RECOLLETION_

   (5) Date of decision: _NO RECOLLECTION_

   b. (1) Name of court: _NO RECOLLECTION_

   (2) Nature of proceeding: _NO RECOLLECTION_

   (3) Issues raised: (a) _NO RECOLLECTION_

   (b) _____

   (4) Result (Attach order or explain why unavailable): _NO RECOLLECTION_

   (5) Date of decision: _NO RECOLLECTION_

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
   _NO RECOLLECTION_

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
   _NO RECOLLECTION_

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☒ Yes. ☐ No. If yes, explain:
   _California Supreme Court_

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
   _NO RECOLLECTION_

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _8-27-08_                    ► _anthony Gellnat_
                                   (SIGNATURE OF PETITIONER)

6. **GROUNDS FOR RELIEF**

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

The B.P.T. erred by Not allowing me to have counsel by an A.D.A. attorney And imposing Upon me a State Appointed Attorney

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where).* (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

The Attorney Mislead me to believe that he Was in fact an A.D.A. Attorney Whom was familiar with the Conditions I Suffer With. Before The hearing I declined to talk With The Attorney because he revealed to me he wasnt an A.D.A. Attorney Yet on the day of the hearing he tells me that he is an A.D.A. Attorney as Well as during The hearing.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

No Recollection

7. Ground 2 or Ground _____ (if applicable):

NO RECOLLECTION

a. Supporting facts:

NO RECOLLCTION

b. Supporting cases, rules, or other authority:

NO RECOLLCTION

MC-275

8. Did you appeal from the conviction, sentence, or commitment? ☒ Yes. ☐ No. If yes, give the following information:

   a.  Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   *Court of Appeals*

   b.  Result  *Denied*                                c.  Date of decision: *8-11-05*

   d.  Case number or citation of opinion, if known:  *06-73699*

   e.  Issues raised: (1)  *NO ReCOLLecTioN*

       (2) _____

       (3) _____

   f.  Were you represented by counsel on appeal? ☒ Yes. ☐ No. If yes, state the attorney's name and address, if known:

   *David M. Porter*

9. Did you seek review in the California Supreme Court? ☐ Yes ☒ No.   If yes, give the following information:

   a.  Result  *NO ReCOLLecTio*                        b.  Date of decision: _____

   c.  Case number or citation of opinion, if known:  *NO ReCOLLecTioN*

   d.  Issues raised: (1)  *NO ReCoLLecTioN*

       (2) _____

       (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

   *NO ReCOLLecTioN*

11. Administrative Review:

   a.  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

   *NO ReCOLLecTioN*

   b.  Did you seek the highest level of administrative review available? ☐ Yes. ☒ No.
       *Attach documents that show you have exhausted your administrative remedies.*

This petition concerns:

- [ ] A conviction
- [ ] A sentence
- [ ] Jail or prison conditions
- [ ] Other (specify):

- [x] Parole
- [ ] Credits
- [ ] Prison discipline

1. Your name: ANThoNY TiLLMAN

2. Where are you incarcerated? Avenal State Prison

3. Why are you in custody?  [x] Criminal Conviction   [ ] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

Kidnap for Robbi'F'Arm, Robbi'F'Arm Forgery

b. Penal or other code sections: P209; P12022.5, P211; P12022.5, P470; P/G

c. Name and location of sentencing or committing court: Sacrameto County

d. Case number: 72539

e. Date convicted or committed: 2-23-87

f. Date sentenced: 1-87

g. Length of sentence: Life - 19 yrs

h. When do you expect to be released?

i. Were you represented by counsel in the trial court? [x] Yes.  [ ] No. If yes, state the attorney's name and address:

SCOTT FELDER — Court AppoiNTED of Sacramento County

4. What was the LAST plea you entered? *(check one)*

[x] Not guilty   [ ] Guilty   [ ] Nolo Contendere   [ ] Other:

5. If you pleaded not guilty, what kind of trial did you have?

[x] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

MC-275 [Rev. January 1, 2007]

**PETITION FOR WRIT OF HABEAS CORPUS**

Page 2 of 6

**BOARD OF PAROLE HEARINGS**
LIFER APPEALS UNIT
P.O. BOX 4036
SACRAMENTO, CA 95812-4036



April 24, 2007

Anthony B Tillman, C-08892
Avenal State Prison
650-207L
P.O. Box 9
Avenal, CA 93204

Dear Mr. Tillman:

This is in response to your letter dated April 3, 2007, requesting an attorney pursuant to the Americans with Disabilities Act (ADA) for your parole consideration hearing.

The Board of Parole Hearings (Board) records reflect you were found unsuitable for parole at your August 1, 2006, parole consideration hearing.  Your subsequent hearing is due August 2008.

You indicated you did not receive an ADA attorney for your hearing as you had requested.  You should be aware that as a requirement to represent inmates, all of the Board's attorneys are required to take the Board's *Armstrong* ADA attorney training.

The issue in your letter will not be responded to in future correspondence.

Sincerely,

*Sandra D. Masell*

Linn Austen
Staff Services Manager I
Lifer Appeals Unit


vm



# Office of the Court Executive
## Superior Court of the State of California
### County of Kings

**Todd H. Barton**
*Clerk of Court and Jury Commissioner*

**Jeff Lewis**
*Chief Deputy Court Administrator and Assistant Jury Commissioner*

**Sandra Salyer**
*Assistant Chief Deputy Court Administrator for Finance*

**Steve Miller**
*Assistant Chief Deputy Court Administrator for Information Technology*

**David Calhoun**
*Assistant Chief Deputy Court Administrator for Family Services*

**Richard Duran**
*Assistant Chief Deputy Court Administrator for Human Resources*

**Rose Hamblin**
*Deputy Court Administrator for Jury Services*

**Cindy Torres**
*Deputy Court Administrator for Courtroom Services*

**Krystina Cifuentez**
*Deputy Court Administrator for Civil & Family Law*

**Diana Cabral**
*Deputy Court Administrator for Criminal/Juvenile/Traffic*

**Barbara Torres**
*Deputy Court Administrator for Records Management & Appeals*

**Avenal Division**
501 E. Kings Street
Avenal, CA 93204
(559) 582-1010, xt. 4094
Fax (559) 585-3269

**Corcoran Division**
1000 Chittenden Ave.
Corcoran, CA 93212
(559) 582-1010, xt. 3004
Fax (559) 585-3270

**Hanford Division**
1426 South Drive
Hanford, CA 93230
(559) 582-1010
Fax (559) 585-3260

**Lemoore Division**
449 "C" Street
Lemoore, CA 93245
(559) 582-1010, xt. 3014
Fax (559) 585-3271

April 11, 2007

**Anthony Tillman, C08892**
**650 2 07 L**
**P,O. Box 9**
**Avenal, Ca 93204**

Re: Petition for Writ of Habeas Corpus

We are in receipt of your Petition for Writ of Habeas Corpus but are unable to process the petition for the following reason(s):

☒ Form submitted is an outdated form. Enclosed you will find the form now in use. (2007 is current form year)

☐ Petitions are illegible. I have enclosed a blank writ for your use.

☐ Not ☐ dated or ☐ signed

☒ Pages are ☐ missing ☒ incomplete from the petition. (Page(s) 2, 5 and 6 )

☐ Petition submitted is a photocopy. Court must receive the original petition.

☐ Unable to determine what you are requesting, please research in law library. Petition for Writ of Habeas Corpus enclosed.

☐ Other:

Upon completion of the necessary information, you may resubmit your petition for consideration. Thank you for your cooperation.

It should be noted that effective July 1, 2002 the Court will no longer be endorsing single face sheets of any documents. If you would like an endorsed copy of your writ you must present a copy in its entirety to the Court for endorsement. Thank you for your cooperation in this matter.

Sincerely,
Todd H. Barton
Court Executive Officer
Clerk of the Courts

1049
Deputy Clerk
Kings County Superior Court

**BOARD OF PRISON TERMS**                                                                 STATE OF CALIFORNIA

## NOTICE AND REQUEST FOR ASSISTANCE AT PAROLE PROCEEDING

**BPT 1073**

INMATE COPY

| I. PRE-INTERVIEW FILE REVIEW (STAFF ONLY) |
|---|

I acknowledge that I have reviewed all relevant and reasonably available central file and/or field file information prior to first contact with the inmate/parolee involved in this parole proceeding. For revocation proceedings, this file review must include, at the minimum, a review of the CDC Form 611 (revised 06/01) or a Parole Disability Review Sheet (PDRS) and attached documents, if any.

Print Name: _F. Torres_   Sign Name: _F. Torres_   Date: _11/5/8_

### Identified Disabilities

☐ Mental Health Concerns (Circle One)  CCCMS   EOP   MHCB   DMH   128C dated:_____

☐ Developmental Disability (Circle One)  DD1   D1A   DD2   DD3   128C-2 dated:_____

☐ Physical Disability (Circle all that apply) (verified on CDC Form 1845 ) Dated _____

**Mobility** (DPW / DPO / DPM / DNM)  **Vision:** (DPV/DNV)  **Hearing:** (DPH / DNH)  **Speech:** (DPS / DNS)

☐ Other Disability (that may limit access): _____ documented on_____ dated: _____

☐ Learning Disability documented on_____ dated: _____

☒ **NO DISABILITIES IDENTIFIED FROM THE FILE REVIEW.** _____

### Other Potential Assistance Needs:

☐ Reading Level _____  Total GPL _____  (If not available, note "N/A")

☐ Non-English Speaking (List language(s) inmate/parolee speaks):_____

| II. INMATE/PAROLEE RIGHTS & SELF IDENTIFICATION |
|---|

You have a right to receive help for your hearing. If you need help talking, reading, hearing, seeing, understanding or getting to your hearing, you have a right to that help. You have a right to receive help in meeting with your attorney. If you do not speak English, you have a right to an interpreter. If you are deaf and use sign language, you have a right to a sign language interpreter. If you cannot read, the BPT or CDC must provide you with help to read the forms and papers. If you need special transportation, the BPT or CDC must provide it for you.

**Check all that apply:**

☐ I need help reading my documents.
☒ I need help understanding the procedures and forms.
☐ I need a sign language interpreter.
☐ I need a wheelchair and I ☐ do have one. ☐ do not have one.
☐ I do not speak English and need an interpreter in _____ (language)
☐ Other_____

☐ I need the following help to hear _____
☒ I need the following help to see _____
☐ I need to communicate in writing.

☒ **I do not need any help for my parole hearing.**

X _F. Torres_     CDC # _C08892_     X _1/5-08_
Inmate/Parolee Signature          CDC #              Date Signed

| III. INITIAL SERVICE OF RIGHTS (STAFF ONLY) |
|---|

I have informed inmate/parolee of his/her rights and charges, if any, and have determined that he/she:

☒ **Appears to understand**          ☐ **Appears to have difficulty understanding**

☐ **Effective Communication Method Used:** (Foreign language interpreter, sign language interpreter, read/spoke slowly, assistive device, etc.)

Additional Comments:_____

_F. Torres, CCI_          _F. Torres_          _11/5/8_
Staff Name and Title (please print)   Staff Signature          Date

| IV. BPT REVIEW FOR INTERNAL USE ONLY (Non-Lifer Cases) |
|---|

**Accommodation(s)/Assistance to be provided at hearing(s):** _____

_____

_____          _____          _____
Staff Name and Title (please print)          Staff Signature          Date

| NAME | CDC # | TYPE OF HEARING | DATE OF HEARING | LOCATION |
|---|---|---|---|---|
| Tillman Anthony | C08892 | SUS | 1/2009 | ASP |

**BPT 1073** (Rev 10/04)          Distribution: White – C-file, Canary – ADA Coordinator, Pink – BPT ADA CU, Goldenrod – Inmate/Parolee

INMATE COPY

PSYCHOLOGICAL EVALUATION
FOR THE BOARD OF PAROLE HEARINGS
AUGUST 2008 SUBSEQUENT CALENDAR
AMERICAN CORRECTIONAL SOLUTIONS
AVENAL STATE PRISON (ASP)

## I. IDENTIFYING INFORMATION

| | |
|---|---|
| Inmate Name: | Tillman, Anthony |
| | AKA: Jessie Coleman, Anthony Lee, |
| | Andrew Lee, Andy Lee |
| CDC Number: | C-08892 |
| DOB: | 05/07/60 (Current Age, 48) |
| Controlling Offense: | PC 209, Kidnap for Robbery w/Deadly Weapon |
| Date of Offenses: | 05/13/85 – 05/21/85 (Age 25 at time of offenses) |
| Sentence: | 19 years to life |
| County of Commitment: | Sacramento |
| Date Entered into CDCR: | 02/23/87 |
| Date Received at ASP: | 07/21/04 |
| Classification Score: | 19 |
| CDCR Forensic Evaluator: | A. Luckerman, PsyD (Contractor) |
| Date of Evaluation: | 05/30/08 |

## II. SOURCES OF INFORMATION

The inmate's Central File and Unit Health Record (UHR) were reviewed. This review included the psychological report for the Board of Parole Hearings (BPH) authored by Dr. Giantonio (05/23/03). For the purpose of the current evaluation, Mr. Tillman was interviewed on 05/30/08. He was informed that the interview was not confidential and that a report with the results of the evaluation would be submitted to the BPH to assist in determining his eligibility for parole. The inmate appeared to understand the nature of the evaluation and the possible consequences of the interview to the best of his ability. He agreed to participate. For reasons not limited to the possibility that an individual may have a mental disability or condition, which may qualify under the Americans with Disabilities Act, the evaluation was conducted by a licensed psychologist. Also, it is the conclusion of the undersigned examiner that it was not necessary to provide auxiliary aids or assistance to achieve <u>adequate</u> communication. <u>In this respect, effective two-way communication was established by virtue of a series of questions by this evaluator and appropriate responses by the inmate.</u> <u>The inmate was additionally able to acknowledge the options available to him relative to this report, as noted in the italicized paragraph, below.</u> This evaluator is not responsible for any inaccurate statements, or subsequently changed opinions, expressed by the inmate.

*Note: If the inmate has any concerns or disagreements about the content of this report, he is free to offer said concerns, either verbally or in writing, at his next board appearance. If the inmate chooses to offer a written rebuttal, it can be submitted with the current evaluation for future reference.*

This current report is an addendum for update to the BPH, and only information relevant to the current assessment, and more recent to prior reports, will be addressed.

## III.  QUESTIONS POSED BY MOST RECENT (AUGUST 2006) BPH

Mr. Tillman last appeared before the BPH in August 2006. After that Hearing, his parole was denied for 2 years.  His last BPH made the following recommendations:

1. No more 115's or 128A's
2. Get self-help
3. Stay discipline free
4. Earn positive chronos.

The panel subsequently submitted BPH form 1000(a) requesting an updated psychological assessment of the inmate to include:

1. The prisoner's violence potential in the free community;
2. The significance of alcohol/drugs as it relates to the commitment offense and an estimate of the prisoner's ability to refrain from the use/abuse of same when released

## IV.   INTERVIEW INFORMATION

At the outset of the interview for the purpose of this report to the Board of Parole Hearings, the planned focus was to update any information relative to the most recent full evaluation, as well as to deal with any unexamined issues relative to intrapersonal functioning at the time of the index offense.

Current Mental Status:

Mr. Tillman appeared alert and was dressed appropriately. He denied having any medical ailments that would impact his ability to interview. He did not display any physical or mental impairment that would prevent him from interviewing with this examiner.

He was personable, articulate, and cooperative throughout the interview. His attention and concentration were within normal limits. He was oriented to person, place, time, and purpose of the interview. He made good eye contact. His facial expressions were responsive and appropriate to conversation. His mood demonstrated a normal range of emotions with consistent affect.

His thinking process was linear and goal-directed. His thought content was rational and free from delusional material. His insight into his current circumstances was adequate. His general fund of information was adequate. He reported his sleep and appetite were

good. He denied having any suicidal thoughts. He is not currently a member of the Mental Health Services Delivery System (MHSDS), nor has he ever been since his CDCR incarceration. His Test of Adult Basic Education (TABE) scores as of 2003 reflected an overall, 4.0, grade-equivalence. In 2002, his scores reflected an overall, 4.9, grade equivalence. Dr. Giantonio (2003) noted that Mr. Tillman had dyslexia and dysgraphia. In 2003, he received passing score on cognitive test given for Recommendation for Adaptive Support.

<u>INSTITUTIONAL PROGRAMMING:</u>

This section will address the inmates programming during the current review period.

Mr. Tillman reported that he is currently unassigned. He had been briefly assigned to culinary and education. Mr. Tillman denied participation in any self-help for the past 5 years. When asked about any earlier self-help activity; he reported he participated when he was incarcerated at Tracey and Old Folsom. He stated, "I asked at Committee. They said it's here but I haven't seen it." He also said that Tracey had a program for dyslexics and he found that helpful; but Avenal did not have such a program. He said the last time he participated in self-help groups was in 1998-1999. He also denied receiving positive chronos. However, per the Life Prisoner Evaluation Report (LPER) completed on 05/14/08, he received the certificates/128B's for completing the following programs: Planning for Sobriety (09/06), Attitudes and Beliefs (09/06), Alcohol and Other Drug Education (10/06), Triggers, Cravings, & Avoiding Relapse (10/06), Stress and Emotional Well-Being (10/06), Anger and Communication (10/06, Alcohol and Tobacco (10/06), Negative Emotions (10/06), Spirituality (10/06), Skills for Reducing Stress (11/06), Relapse Prevention (11/06), Definitions, Terms & Self-Diagnosis (11/06), Focus on AIDS (01/07), Physical Wellness (01/07), Domestic Violence (01/07), and Family Matters (01/07).

Since his last BPH, Mr. Tillman received 2 Rules Violation Reports CDCR-115's: Quitting Job Assignment (09/07) and Refusing to Work (11/07). He has 10 CDCR-115's. His classification score is 19.

He reported he watches TV, walks and exercises in his free time. He denied participation in any volunteer activities. He reported he does not receive visits and last had contact with his mother by phone 3 years ago. He said he sends a card to her about one time per month and is in touch with his sister and brothers "mostly through my mother."

<u>INSIGHT / SELF ASSESSMENT:</u>

When asked how he viewed himself upon incarceration he responded:

> I was a very bad young man with alcohol and the wrong company. It wasn't right. It was a long time ago; people change. I have. I couldn't stop drinking beer and I got out of control- a lost state of mind. I had a little marijuana. It was part of the deal it

partnered with the beer. Drinking was most of it, 90 percent. I was smoking a joint or two every two days. It was my cigarette.

When asked how he views himself now he stated:

110% better. All that stopped a year later. Cleaned my system out. It was put behind. I was in and out of prison and juvenile. Out of 25 years on the streets, maybe 7 years out; not a good history growing up. Drinking started 17-18 years old. The other years I was being bad looking for something to do not being in school and being around not too good friends. Time was catching up. It would have been my third trip, 16 months and 8 months previously. I saw the earlier times as a warning. Now I'm a different person. I'm hate it here because they think I'm a goody two shoes. There's so much negative going around. I'm an outcast. My term is done. I don't fit in. It's putting good with a bunch of bad.

He reported that his personal strength was, "I want to talk to the young men and share my story. They come back and forth. I try to help. I keep trying but it's hard."

When questioned about what he takes pride in, he replied, "I can see where I was. It's so sad that I can't reach out to 17-18 year-olds here. I started out in juvenile. I see myself in them; but they're not going to listen to me. I pray for them."

When asked about participation in AA, he replied, "I started in the early 80's. AA showed me I am an alcoholic. It showed me drinking makes me a totally different person and not good. I would never go back to alcohol. I despise drinking."

When asked about his history of alcohol and substance use he answered:

When I was 18 years old I drank 4 six packs 3 times a week when I would need the courage to do a crime. I did it to be hanging around my friends. I've seen all my friends here and I tried to preach to them. I don't do this stuff no more. I'm not getting with them no more. The last time I had alcohol was 1985. Marijuana I started when I was 14 years-old. I had a dime bag per week about 2 cigarettes every three days. I was hanging around with the wrong crowd. The last time I had access was 1991. I got a CDC 115 for substance use. My friends were at Solano. I had a cigarette in my pocket. I never had a DUI or possession charge. Marijuana never affected school. It made me work better. But I didn't stay employed long. I would quit. Alcohol I started after I left school. I never had any treatment on the outside. I tried to stop drinking in 1984. I had stopped hanging around my friends. I came to Sacramento on a parole pass. That's when I got this crime. I tried to stop, but I started again. I ran into my friends. It's hard to break away from the company I was keeping. I stayed away 8 months but hooked back up with friends and started back drinking until this crime. Then I stopped when I got to prison.

When asked about Alcoholics Anonymous (AA) he responded, "I don't think about 12 steps. It doesn't flash in my head anymore; but I plan to do rehab or AA when I get out."

He would emphasize to the Board, "Back then I had trouble. I was trying to find myself; but past then my record is good. But they keep looking at my past. That's part of why I'm appealing and because I'm ADA dyslexic. They want me to get this other stuff but ADA treatment should come first. I've done AA and self-help in other places."

PAROLE PLANS IF GRANTED A RELEASE:
When this examiner asked the inmate to discuss his parole plans, he stated, "I'm going to wait on the Court for getting updated letters. My mother had everything set from the last hearing. She had a work program, self-help and fitness; but I put it on hold until the Court thing." As stated by Mr. Tillman, there are no updated letters of support regarding residence, employment, family support or alcohol/substance treatment plans.

INMATE UNDERSTANDING OF LIFE CRIME:

Summary of Life Crime:

The life crime was detailed in numerous places in the inmate's records; thus, it will not be replicated in its entirety in this report. In essence, on May 13, 1985, Mr. Tillman entered a Taco Bell armed with a revolver and wearing a ski mask. He demanded money and took approximately $109. He then went next door to a 7-11 store with revolver and mask, demanded money, and took about $90. On May 20, 1985, he entered the Sacramento Six Theaters armed with a gun and took cash from the cashier; then he forced the clerk at gunpoint to the office. The cashier said the defendant cocked the handgun he was holding and pointed it at him, directing him to lie on the ground. The victim said the subject told him, "If you want to live, you'll do as I say." He forced the manager and another victim at gunpoint to place money in a bank deposit bag. During this time, the revolver discharged striking one of the victims with a ricocheting bullet. He then forced the same clerk out of the office where he took a vehicle at gunpoint, from a customer at the theater. On May 21, 1985, he purchased a vehicle with a bad check.

Inmate's version of Life Crime:

When asked his version of the life crime he explained:

> I was over intoxicated and I got a couple of robberies in the same day. One was at the Sacramento Six Theater. A person got moved from the snack bar to a different place in the same business and they charged me with kidnapping. The time came from this part. I had a gun. First time I had a gun. I was mostly burglary and petty crime. I had taken the gun out of a car. Alcohol gave me courage, an extra push.

In the Probation Officer's Report it is reported that Mr. Tillman denied he was in the Sacramento area at the time of his index offense. In the LPER (2003) it noted,

> The prisoner was interviewed by this writer on May 02, 2003, for purposes of preparing this report. At the time, Tillman stated he was very sorry for what he had

done and was glad no one was seriously injured. He admitted to committing all of the crimes he was convicted of, and stated he was under the influence of alcohol at the time. He went on to say that when he drank, he felt confident, powerful and courageous. Later he realized it was false. Tillman stated he agreed with the POR version of each Count summary listed in the report.

In response to a question about underlying causes, he responded:

I didn't stay in school a lot and I kept bad company and stayed in a lot of trouble. At the time, I didn't want to be in school or be boxed in. It was bad company. Now I see everything I did. There's no excuse. Now I know. It's gone now. I got well.

In response to a question about alcohol consumption, he stated:

I didn't do it for pleasure. I did it for a push for courage to make me stronger to get in trouble to do negative things. If I didn't, I wouldn't have done nothing. It gave me courage to do crimes. I couldn't do it without it.

When asked who was to blame for the crime he explained, "Me, nobody but Mr. Tillman." When asked about the victim he responded, "I apologized. I told the DA and the Board. I'm very sorry it happened. I am sorry for it. Whether the Board believes it that people change. I really am sorry." When asked about the bullet hitting the victim he stated, "It was a little nick, the gun discharged. I was really sorry for that. He didn't get hurt bad."

When asked if he felt he had a problem with anger or handling frustration, he stated, "I don't see anger, stress or frustration as a problem for me."

<u>MENTAL HEALTH CONCERNS OR PERSONALITY DISORDERS</u>:
He was never treated for a mental illness while in the community. During his incarceration, he has never qualified for inclusion in the Mental Health Services Delivery System (MHSDS). He had no current complaints of depressed or anxious mood.

Mr. Tillman has a documented history of alcohol, marijuana, and cocaine abuse. In the interview, he stated he started drinking alcohol at 17-18 years old and started smoking marijuana when he was 14 years-old. He also stated he was intoxicated on the day of his life crime. Additionally, the Probation Officer's Report noted:

The defendant reports that he has been drinking heavily for the last ten years, and was involved in Alcoholics Anonymous between 1984 and 1985, but resumed drinking in 1986. Relative to controlled substances, the defendant states that he has been using cocaine since 1980 and describes his use as heavy for the last two years. He states that he was using approximately two grams of cocaine ($200) worth a day upon his arrest in this matter.

In 1987, The Institution Staff Recommendation Summary NRC/CMF noted, "Subject denies drug use, social drinker, no alcohol problems."

The Life Parole Evaluation (LPE) (2003) reported:

> During our interview on May 02, 2003, Tillman stated he only remembers attending school through the sixth grade at Everett Jr. High School. Although the Probation Officer's Report (POR) states he completed the 10th grade at Mission High School in San Francisco and quit in 1974. Tillman also disagreed with the controlled substances portion of his POR. While the POR States in part that he resumed drinking in 1986, he had been using cocaine since 1980, and describes his use as heavy for the last two years, using two grams a day worth approximately $200.00. Tillman states he was incarcerated in 1986 and not drinking and completely denies any use of cocaine ever in his life. Tillman admits to smoking marijuana starting at age 18 and beginning to drink alcohol in his mid 20's.

In the evaluation completed in 2003, Dr. Giantonio reported:

> Mr. Tillman is open about his use of alcohol. He believes that he started when he was nine years of age with increasing use, dependency, and addiction and did not stop using until the age of 24 years, during this most recent incarceration. He states that he has experimented with marijuana. He denies emphatically that he has ever used or even experimented with marijuana. He denies emphatically that he has ever used or even experimented with amphetamines, cocaine, heroin, LSD, PCP, or other drugs. He reports attending AA for the course of one year in 1988. It does not appear that he was able to glean a lot from the experience, probably most of all because of his limited IQ.

> Mr. Tillman states that he went as far as his sophomore year in high school...He states that he had a long duration of hookies and suspensions. The only thing he liked about school was physical education. He states that he quit school eventually; as he looks back, because he wanted and needed money. However, he also states that when he left school he lived with one friend or another and watched TV.

Regarding Mr. Tillman's participation in AA, the 2003 LPER indicated Mr. Tillman attended Alcoholics Anonymous (AA) "for the quarter ending November 27, 1989. He also provided me with a Certificate of Achievement for attending AA from October 24, 2001 through February 27, 2002 while at DVl."

Additionally, he has three CDCR-115's substance related including: Possession of a Controlled Substance/Marijuana (02/1994), Positive Urinalysis/Marijuana (02/1994), and Use of Controlled Substance (04/96).

Mr. Tillman's juvenile record includes Runaway, Parole Violator, Attempted Grand Theft, Attempted Burglary, and Grand Theft Person. His adult convictions include Burglary 2nd degree, Grand Theft Person (16 months state prison), receipt of Stolen

Property, and Burglary 2nd degree (two years state prison). The conviction for his life crime had multiple counts including Kidnapping, Grand Theft Auto, Forgery, Receiving Stolen Property (8 counts), False Information to Peace Officer, Ex-felon in Possession of a Weapon, Petty Theft w/Prior (3 counts), and Auto Burglary (2 counts).

Regarding his parole record, the POR stated:

> The defendant's parole agent indicates that during the period of time the defendant was on parole, he was returned as a parole violator on several occasions and was last released on parole on April 4, 1984. The defendant's parole agent indicates that the defendant was listed as a parolee at large since February 14, 1985 and concludes that his adjustment under parole supervision was unsatisfactory.

Dr. Giantonio (2003) diagnosed Mr. Tillman with Borderline Intelligence, Severe Alcohol Abuse, by history, institutional remission, and Antisocial Personality Disorder, in current institutional remission.

## V.   DIAGNOSTIC IMPRESSION

| Axis I: | 304.80 | Polysubstance Dependence, w/ Physiological Dependence, In a Controlled Environment (Alcohol, Cannabis, and Cocaine) |
|---|---|---|
| Axis II: | 301.7 | Antisocial Personality Disorder |
| Axis III: | | Deferred to physician |
| Axis IV: | | Incarceration for life term. |
| Axis V: | | GAF: 75 |

The extent of Mr. Tillman's alcohol abuse is not in question; neither is his use of marijuana. However, given his retraction of cocaine abuse and the various statements about amount and age of initial use, it is difficult to know the complete story. At some point, Mr. Tillman has lied about his substance use. For example, at one point in the record, he stated he only experimented with marijuana while in the interview he made it clear that he viewed smoking marijuana as one would view smoking a tobacco cigarette and that it went well with his drinking beer and was part of his routine. He has made it clear in his statements that he was intoxicated while committing his life crime. However, his crimes took place over several days and showed a pattern of behavior that indicated sober thinking and if nothing else, moments during the commission of the crime when he would have been sober and lucid enough to make a conscious and aware decision about his behavior. Additionally, although his statements vary in terms of which substances he actually abused when he has not denied his history of substance and alcohol use. The record indicates he has given varied statements of his drugs of choice and use patterns. Although he is an unreliable historian, the record reflects statements he has made indicating heavy use of alcohol, marijuana, and cocaine. He also has 3 substance related CDCR-115's including: Possession of a Controlled Substance/Marijuana (02/1994), Positive Urinalysis/Marijuana (02/1994), Use of Controlled Substance (04/96). It will be important for him to start participation in AA/NA to enhance his support structure and help him refrain from use/abuse of alcohol/drugs in the future. He appears intelligent

enough to comprehend the concepts of AA/NA and regardless of dyslexia; AA/NA is verbally oriented and does not necessarily require writing skills.

Historically, he met the DSM-IV-TR diagnostic criteria for Polysubstance Dependence (Alcohol, Cannabis, and Cocaine). He engaged in a maladaptive pattern of substance abuse in the community, which led to clinically significant impairment. He incurred legal and custodial consequences as a result of his substance use. Additionally, he continued his substance use while incarcerated; which suggested that he was unable to terminate his use of intoxicating substances for some time.

According to the DSM-IV-TR, "The essential feature of a personality disorder is an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture and is manifested in at least two of the following areas: cognition, affectivity [emotional expression], interpersonal functioning, or impulse control." Additionally, this pattern emerges in adolescence and continues into adulthood.

The essential feature of Antisocial Personality Disorder is "a pervasive pattern of disregard for, and violation of, the rights of others that begins in childhood or early adolescence and continues into adulthood. Individuals with Antisocial Personality Disorder fail to conform to social norms with respect to lawful behavior. They may repeatedly perform acts that are grounds for arrest (whether they are arrested or not.) They disregard the wishes, rights or feelings of others. They are frequently deceitful and manipulative in order to gain personal profit or pleasure. They may repeatedly lie or malinger. A pattern of impulsivity and a failure to plan ahead may be evident. People with this disorder tend to be irritable and aggressive and may repeatedly get into physical fights or commit acts of physical assault. They may be consistently irresponsible and may not honor financial obligations. They lack remorse, as indicated by being indifferent to or rationalizing having hurt, mistreated, or stolen from another."

Mr. Tilman's juvenile record and history of early adolescent misconduct indicated that he exhibited significant evidence of a Conduct Disorder prior to the age of 15; this is a prerequisite for a finding of Antisocial Personality Disorder in adulthood. He has an extensive adult, criminal record; as well as multiple disciplinary infractions while in custody. Over his lifetime he has demonstrated an unwillingness to conform his behavior to expected societal norms, whether in the community or in prison. He communicated little remorse for his victims and minimized the impact of physical injury. Therefore, a diagnosis of Antisocial Personality Disorder is appropriate.

## VI.   PREVIOUS EVALUATION SUMMARIES

In the last Psychological Evaluation that was prepared for the BPH Dr. Giantonio opined:

> Assessment of dangerousness within the controlled setting of the institution is seen as average in comparison with other inmates. Assessment of recidivism "more likely than not, burglaries," is also seen as average when compared to other inmates.

In a less controlled setting, such as a return to the community, the inmate's gains need to be supported by some kind of halfway house supervision should he be warded a release date. Mr. Tillman responds well to clear directives and good structure. It is imperative that the inmate understands the necessity of staying sober in order to be safe in the community and for the community to be safe with him in it. It is unlikely, however, that he is any candidate for AA or psychotherapy because of his limited intellectual resources.

## VII.   RISK ASSESSMENT/CONCLUSIONS

The Board of Parole Hearings' questions will be addressed for each issue presented, as noted in an earlier section of this report.

1). *Mr. Tillman's violence potential in the free community.*

*Note – There have been prior requests by the Board that an inmate's violence potential be "compared to the average citizen."* In most respects, this is not conceivably possible, given the relatively low incidence of violence in free society, and the fact that the "average citizen" has not been convicted of a violent felony. Moreover, there is no definitive research that reliably compares risk of future violence in life term inmates (who have been released) with that of citizens without a record of violence. The lowest risk life term inmate in CDCR will, given his/her violent behavioral conviction history, invariably be adjudged higher than the "average citizen" when it comes to risk for future violence.

*The current research literature indicates that an empirically based approach to is the most reliable and valid method for assessing risk of future violence. In the present evaluation, two separate assessment guides were used to help estimate this individual's risk for future violence in the community: the Psychopathy Check List – Revised (PCL-R) and the History – Clinical – Risk – 20 (HCR-20). The data for scoring these instruments were obtained from information derived in both the inmate interview and the files reviewed. These measures are widely used and are supported by years of research in the risk assessment field. They have been cross-validated with various forensic populations, including United States males in correctional settings; however, the following results need to be regarded with some level of caution since some individuals may possess idiographic differences that could limit the applicability of these instruments. The evaluator has taken these factors into consideration in determining how much weight to allot each of the measures and in formulating an overall estimate of risk for future violence in the community. Estimates of risk for violence will be presented categorically: low, moderate, or high.*

The Hare Psychopathy Checklist- Revised (PCL-R) is a measure of an individual's level of psychopathy. This 20-item instrument is designed to measure mostly static (unchanging) risk factors for future violence. The PCL-R gives a measure of psychopathy, which is a moderate predictor of future violence. The inmate's scores placed him in the **high** range of the clinical construct of psychopathy (71.4 percentile rank) when compared to other male offenders. The inmate has a juvenile record that

began at 14 years of age and as an adult, he had two prior incarcerations in state prison. He also had a revocation of conditional release. His impulsivity and poor behavior controls were inherent to his life crime and his life crime was violent. His early use of alcohol and drugs, and criminal versatility also contributed his score as did his current lack of a feasible parole plan. Moreover, in the interview, although he did not present as glib or shallow his statement regarding how he views himself now, "I'm an outcast. My term is done. I don't fit in. Putting good with bunch of bad," pointed to a grandiose idea of his place in the institution.

HCR-20: The HCR-20 is a 20-item risk assessment guide that attempts to measure risk for future violence by dividing risk into three categories: historical, clinical, and future risk management. The inmate's overall score places him in the **high** range for future violence.

In the historical domain of HCR-20, the most significant factors that contributed to his total score included the violence of his crime, his age when he committed his crime, and that he was intoxicated when he committed his index offense. He also has a history of early alcohol and drug abuse and a juvenile record. He became a ward of the State, had an unstable employment history, prior supervision failure while on parole, marked features of psychopathy, and has been diagnosed with Antisocial Personality Disorder. He had been married for one year, and per the record resided with another woman for "five months" during which a child was born. It did not appear that he was able to maintain stable, romantic relationships. These factors correlate with risk of violent recidivism.

There is no indication that he was suffering from a major mental illness. Therefore, this item did not contribute to his risk of recidivism within the historical domain.

In the clinical domain or more current and dynamic domain of the HCR-20, the inmate has little reported history of programming. In the interview, he said he has not participated in groups since his arrival at Avenal, approximately 4 years. His history indicates that he has not been particularly responsive to the BPH recommendations to participate in self-help programs. His insight into his personality structure and the causative factors of the life crime are minimal; he lacks a comprehensive substance abuse relapse prevention plan. Recently, he has behaved in an impulsive manner, as indicated by his 2 CDCR 115's in 2007. In the interview, he also verbalized negative attitudes toward the BPH and Avenal staff for not recognizing his reported difficulty with Dyslexia. A lack of insight, negative attitudes, impulsivity, and unresponsiveness to treatment correlate with recidivism. The only item, which did not contribute to his score in this domain was the fact that he is not experiencing active symptoms of a major mental illness.

As for the management of future risk domain of the HCR-20, at the time of this evaluation, Mr. Tilman's plans for parole were not well formulated and lacked verification. He could not articulate a comprehensive relapse prevention plan that he could exercise in the community. His exposure to drugs and alcohol will only increase when he is returned to

the community; thus placing him a greater risk for relapse. He has marketable skills indicated by his Certificate for Landscaping. However, at this time, without updated letters of support it is difficult to asses his future plans for residency, employment or substance abuse prevention. He does appear to have support from his mother, but again, without an updated letter of support it is impossible to assess. He did state that he plans to "do rehab or AA when I get out," and it is essential that his plan include arrangements for a structured AA-type program to enhance his support structure and help him refrain from use/abuse of alcohol/drugs. Notable was the fact that he has not been participating in AA recently while in custody. Past behavior is the best predictor of future conduct. His behavior in custody does not suggest that he would be committed to a 12-Step program if released to the community at this time.

Mr. Tillman's overall score as measured by the HCR-20 placed him in the **high** risk category for recidivism. This suggests that his risk is high in the <u>specific</u> context of his current clinical presentation and the parole plans that have been offered, to date.

OVERALL RISK ASSESSMENT:
Overall, this inmate poses a **high** risk to recidivate in a violent manner. Such an assessment is at least partially based on the likelihood of continued abstinence from any substance abuse. This assessment takes into account his cultural background, personal, social, and criminal history, institutional programming, community/social support, release plans, and current clinical presentation.

An increased risk of violent recidivism remains if he is unemployed, is homeless, possesses a weapon, has no social support, associates with antisocial peers, and uses intoxicating substances.

His risk of recidivism could be *decreased* if: he plans for and adheres to parole plans to obtain immediate employment and housing, establishes a support network provided by family, friends or community resources, and develops a comprehensive substance abuse relapse prevention program.

2). *The significance of alcohol/drugs as it relates to the commitment offense and an estimate of the prisoner's ability to refrain from the use/abuse of same when released;*

Per his self-report and the record, alcohol and substance abuse were factors in his life choices and life crime. The record indicates he was abusing substances as a juvenile. Moreover, he obtained 3 CDCR 115 substance related offenses. These facts indicate that alcohol and drug use and abuse have been a problem area. Additionally, he has provided disparate accounts of his actual drug and alcohol use. This suggested that he has not come to terms with the extent to which drugs and alcohol affected his life in an honest manner.

Although Mr. Tillman related that had participated in AA historically, at the time of this evaluation he had not followed a 12-Step program for the past five years. It would be important for him to participate in AA/NA while incarcerated and plan to participate in an AA type program when in the free community. Until he can effectively identify his triggers to substance abuse and discuss coping strategies to make more adaptive choices,

his risk of relapse likely remains high. Moreover, he will need to develop a comprehensive relapse prevention plan that he can exercise in the community. Mere attendance at AA meetings will be insufficient. Mr. Tillman will need to demonstrate his comprehensive understanding and personal application of the 12-Step program, if that is the resource he intends to use in the community upon parole.

COMMENTS:

Mr. Tillman has no current history of participation in self-help groups. He has also obtained 2 CDC-115's since his last BPH. Although dyslexia might make participation in some groups difficult, AA/NA at least is a verbally oriented program. His lack of participation or even his lack of desire to find such a program at Avenal points to a lack of motivation that is problematic. He says he "does not fit it" but he has yet to show this through his behavior, which is the only evidence that is measurable. Involvement in self-help groups, especially AA/NA is highly recommended.

If Mr. Tillman remains in custody, it is recommended that, he (1) continue to explore the dynamics that led to his criminal behavior and life crime and demonstrate an appropriate understanding of these issues, (2) solidify his plans for parole and have support letters confirming the same, (3) remain free from rule violations, (4) start participation in AA/NA. Considering his poor performance on previous supervision, it will be important for him to (5) explore how he will abide by the terms and conditions of his parole and be able to discuss this and the changes he has made.

*Arona B. Luckerman* PsyD                    06/05/08

_____            _____

Arona B. Luckerman, Psy.D.                   Date Submitted
CA License # PSY19568
Forensic Psychologist/Contractor

The American Correctional Solutions' Peer Review Board has reviewed this evaluation, offered consultation, and submitted it to Cynthia Moore, BPH-FAD on 06/05/08.

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use, or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act and the Health Insurance Portability and Accountability Act (HIPAA). If you are not the intended recipient, please contact the sender and destroy all copies of this communication.